IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **RITCHIE DIAZ**, <br><br> Plaintiff, <br><br> *v.* <br><br> **SUNRISE GROUPS, LLC**, <br><br> Defendant. | **CIVIL ACTION** <br><br> **NO. 21-3259-KSM** |

**M E M O R A N D U M**

**MARSTON, J.**                                                                                              **JULY 24, 2024**

Plaintiff Ritchie Diaz is suing his former employer, Defendant Sunrise Groups, LLC, for overtime wages under the Fair Labor Standards Act ("FLSA") and unlawfully withheld wages under the Pennsylvania Wage Payment and Collection Law ("PWPCL"). Sunrise Groups, however, never entered an appearance in this case or filed a responsive pleading, leading to Mr. Diaz's present motion for default judgment. For the reasons stated below, the Court grants Mr. Diaz's motion.

### BACKGROUND

Ritchie Diaz began working for Sunrise Groups as a Cable and Fiber Technician in April 2020 where he was responsible for repairing and maintaining cable and fire lines for Sunrise Groups' clients. (Am. Compl. ¶¶ 16–17.) Mr. Diaz alleges that he typically worked 78 hours across six days per week, which included interstate travel to perform work in Connecticut and Louisiana. (*Id.* ¶¶ 18–19.)

Mr. Diaz alleges that he was not compensated at a rate of one-and-a-half times his pay for work performed over 40 hours per week based on his employer's pay structure, which he alleges

violates the FLSA and the Pennsylvania Minimum Wage Act ("PMWA").  (*Id.* ¶¶ 24, 30, 42.) Mr. Diaz states that Sunrise Groups also improperly deducted wages from his paycheck for allegedly not performing work to the quality level that Sunrise Groups' clients demanded, with such deductions violating the PWPCL.  (*Id.* ¶¶ 26, 47.)

Mr. Diaz first filed his Complaint in July 2021 and properly served Sunrise Groups shortly thereafter.  (Docs. No. 1, 3.)  When Sunrise Groups did not timely file an answer or other responsive pleading, Mr. Diaz requested default, which the Clerk of Court entered on September 24, 2021.  (Doc. No. 4; Sept. 9, 2021 Entry.)  Mr. Diaz then filed an Amended Complaint on November 8, 2021, and when Sunrise Groups again did not respond to the Amended Complaint, Mr. Diaz requested another default on January 10, 2022.  (Docs. No. 5, 6.)  The Clerk of Court entered default as to Sunrise Groups on January 21, 2022.  (Jan. 21, 2022 Entry).

The Court then placed the case in suspense on April 5, 2022 when Mr. Diaz failed to file a motion for default judgment.  (Doc. No. 7.)  In April 2024, the Court removed the case from the suspense docket and ordered the parties to provide an update about whether the case should be dismissed or closed.  (Doc. No. 10.)  Mr. Diaz then filed the present Motion for Default Judgment on May 6, 2024.  (Doc. No. 11.)  The Court ordered Mr. Diaz to serve copies of the motion on Sunrise Groups personally, by email, and by certified mail with a return receipt requested by May 15, 2024.  (Doc. No. 14.)  On May 28, 2024, Mr. Diaz filed an affidavit of service.  (Doc. No. 16.)  The Court held a hearing on the Motion for Default Judgment on May 30, 2024.[1]  (Doc. No. 17.)

---

[1]   No one on behalf of Sunrise Groups appeared for the scheduled hearing.

**LEGAL STANDARD**

If the Clerk of Court has entered default against a defendant, "the party seeking the default then must apply to the court for entry of a default judgment." *E. Elec. Corp. of N.J. v. Shoemaker Const. Co.*, 652 F. Supp. 2d 599, 604 (E.D. Pa. 2009) (citing Fed. R. Civ. P. 55(b)(2) and *Fehlhaber v. Indian Trails, Inc.*, 425 F.2d 715, 716 (3d Cir. 1970)). The Court of Appeals for the Third Circuit generally "does not favor entry of defaults or default judgments." *United States v. $55,518.05 in U.S. Currency*, 728 F.2d 192, 194 (3d Cir. 1984). The Court is required to use "sound judicial discretion" in deciding whether to enter default judgment. *E. Elec. Corp.*, 652 F. Supp. 2d at 604 (citing *Prudential-LMI Com. Ins. Co. v. Windmere Corp.*, No. 94-0197, 1995 WL 422794, at *1 (E.D. Pa. July 17, 1995)).

The Court of Appeals for the Third Circuit has held that courts consider three factors when determining whether a default judgment is appropriate: "(1) prejudice to the plaintiff if default is denied, (2) whether the defendant appears to have a litigable defense, and (3) whether defendant's delay is due to culpable conduct." *Chamberlain v. Giampapa*, 210 F.3d 154, 164 (3d Cir. 2000) (citing *$55,518.05 in U.S. Currency*, 728 F.2d at 195). "In evaluating these factors, the court accepts as true all factual allegations in the complaint, except those related to damages." *Thorn Flats, LLC v. BuildPro Constr. LLC*, No. 21-5412, 2022 WL 1720014, at *2 (E.D. Pa. May 26, 2022) (citing *Serv. Emps. Int'l Union v. ShamrockClean Inc.*, 325 F. Supp. 3d 631, 635 (E.D. Pa. 2018)). "However, 'a party in default does not admit mere conclusions of law,' so before considering the *Chamberlain* factors, we begin by considering 'whether the unchallenged facts constitute a legitimate cause of action.'" *Id.* (quoting same).

**DISCUSSION**

**I. Cause of Action**

Mr. Diaz brings a failure to pay overtime wages claim in violation of the FLSA and PMWA. Workers are protected under the FLSA where either "(1) the employee himself may be engaged in commerce or in the production of goods for commerce (so-called 'individual' coverage) . . . ; or (2) the employee may be employed in an enterprise engaged in commerce or the production of goods for commerce (so-called 'enterprise coverage.')." *Quagliariello v. DiPasquale*, No. 20-699, 2021 WL 2287426, at *6 (M.D. Pa. Feb. 9, 2021) (quoting *SeYoung Ra v. Gerhard's, Inc.*, No. 17-5211, 2019 WL 95473, at *4 (E.D. Pa. Jan. 3, 2019)). Courts in this Circuit "agree that generalized assertions of FLSA coverage are sufficient to survive a motion to dismiss." *Id.* (collecting cases). Likewise, "[c]ourts in this Circuit frequently hold that alleging that the defendant was an enterprise engaged in commerce under the FLSA "[i]s sufficient for purposes of a motion to dismiss." *Bedolla v. Brandolini*, No. 18-146, 2018 WL 2291117, at *6 (E.D. Pa. May 18, 2018) (quoting *Dong v. Ren's Garden*, 09-5642, 2010 WL 113382, at *4 (D.N.J. Mar. 22, 2010)). A plaintiff averring that her employer is one within the meaning of the FLSA suffices. *See Doyle v. Wayne Memorial Hosp.*, No. 18-1784, 2020 WL 753196, at *6 n.3 (M.D. Pa. Feb. 13, 2020) (holding that an allegation that an employer fell within the meaning of the FLSA was "sufficient to state a claim under the FLSA at the pleading stage. . .").

Here, Mr. Diaz alleges that Defendant Sunrise Groups "is a 'private employer' who engages in interstate commerce and is covered by the FLSA and the PMWA." (Am. Compl. ¶ 8, Doc. No. 5.) He also alleges that he was employed by Sunrise Groups during all relevant times and is thus "an employee entitled to the protections of the FLSA and the PMWA." (*Id.* ¶ 9.) The Court finds these allegations are sufficient to support coverage under the FLSA. This is further

4

buttressed by the fact that Sunrise Groups has not contested such allegations in the first matter. Thus, the Amended Complaint adequately pleads coverage under the FLSA.

"The FLSA establishes federal minimum-wage, maximum-hour, and overtime guarantees that cannot be modified by contract." *Davis v. Abington Mem'l Hosp.*, 765 F.3d 236, 241 (3d Cir. 2014) (citing *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 69 (2013)). An employer generally must pay employees one-and-a-half times their normal wages when working in excess of 40 hours per week. *Id.* (citing 29 U.S.C. § 207). "Employers who violate the FLSA's overtime provisions by failing to compensate employees may be liable for payment of both unpaid overtime wages and an equivalent amount of liquidated damages." *Alers v. City of Philadelphia*, 919 F. Supp. 2d 528, 557–58 (E.D. Pa. 2013) (citing 29 U.S.C. § 213(b) and *Brooks v. Village of Ridgefield Park*, 185 F.3d 130, 134 (3d Cir. 1999)). "Thus, to recover overtime compensation under the FLSA, 'an employee must prove that he worked overtime hours without compensation, and he must show the amount and the extent of his overtime work as a matter of just and reasonable inference." *Davis*, 765 F.3d at 241 (quoting *Davis v. Food Lion*, 792 F.2d 1274, 1276 (4th Cir. 1986)). The FLSA applies only to employees, and independent contractors are not protected under the statute. *Cherichetti v. PJ Endicott Co.*, 906 F. Supp. 2d 312, 316 (D. Del. 2012) (citing 29 U.S.C. § 201).

In stating an FLSA claim, the plaintiff must allege at least "the general facts of an FLSA violation[,]" though "need not allege the exact dates and times of the overtime worked, nor even the approximate uncompensated number of overtime hours for which wages were not received, but must at least allege some amount of uncompensated time in excess of a given forty-hour work week." *Rui Tong v. Henderson Kitchen Inc.*, No. 17-1073, 2018 WL 4961622, at *4 (E.D. Pa. Oct. 12, 2018). "For instance, a plaintiff's claim that she 'typically' worked forty hours per

week, worked extra hours during such a forty-hour week, and was not compensated for extra hours beyond forty hours he or she worked during one or more of *those* forty-hour weeks, would suffice." *Davis*, 765 F.3d at 243.

Here, Mr. Diaz adequately pleads an FLSA claim. Accepting the well-pleaded facts in the Amended Complaint as true, Sunrise Groups "misclassified" Mr. Diaz as an independent contractor and not an employee. Am. Compl. ¶ 31, Doc. No. 5. This means that, as an employee of Sunrise Groups, Mr. Diaz would be entitled to protection under the FLSA. He also claims that he "typically" worked six days per week and approximately 78 hours in a workweek. *Id.* ¶ 19. He alleges that he was not compensated at the required one-and-a-half times rate required under the FLSA for hours worked over 40 in a workweek and that Sunrise thus did not pay him required overtime wages. *Id.* ¶¶ 23–24. Therefore, Mr. Diaz has appropriately stated an FLSA claim.[2]

Mr. Diaz also brings a sufficient claim under the PWPCL to recover for wages he was not paid at all. The PWPCL permits an employee to recover wages when the employer breaches his or her contractual obligation to do so. *Pestell v. CytoDyn Inc.*, No. 19-1563, 2020 WL 6392820, at *3 (D. Del. Nov. 2, 2020) (citing *Sendi v. NCR Cometen, Inc.*, 619 F. Supp. 1577, 1579 (E.D. Pa. 1985)). "[A] prerequisite for relief under the PWPCL is a contract between employee and employer that sets forth their agreement on wages to be paid." *In re Cargill Meat Sols. Wage & Hour Litig.*, 632 F. Supp. 2d 368, 397 (M.D. Pa. 2008) (collecting cases).

Here, Mr. Diaz alleges that he was an employee of Sunrise Groups and had a contractual agreement with the company such that Mr. Diaz would be paid for the work he completed as a

---

[2] Mr. Diaz also has a cause of action under the PMWA because the PMWA "has an identical standard of liability as the FLSA in overtime violation claims." *Alers*, 919 F. Supp. 2d at 560 (citing *Baum v. Astrazeneca LP*, 372 F. App'x 246, 248–49 (3d Cir. 2010)). Thus, for the same reasons, the Court finds that Mr. Diaz properly pleads a PMWA claim.

Cable and Fiber Technician.  (Doc. No. 5 ¶¶ 2, 15.)  Sunrise Groups then allegedly deducted various amounts from Mr. Diaz's wages in breach of its contractual obligation.  (*Id.* ¶¶ 26–27.)  Taking the allegations as true, Mr. Diaz has alleged a PWPCL claim where his employer did not fulfill its contractual obligation to fully pay him for the work he completed.  Thus, Mr. Diaz has a cause of action under the PWPCL.

## II. *Chamberlain* Factors

Because the Court determines that Mr. Diaz has stated a legitimate cause of action under the FLSA, PMWA and PWPCL, we next consider whether the three *Chamberlain* factors, (1) prejudice to the plaintiff is default is denied; (2) whether the defendant has a litigable defense; and (3) whether the defendant's delay is due to culpable conduct, weigh in favor of granting default judgment.  *Chamberlain*, 210 F.3d at 164.

First, Mr. Diaz will be prejudiced without the entry of default.  He filed his original complaint approximately three years ago and timely served Sunrise Groups, who, after years have passed, has still not entered an appearance or filed any type of responsive pleading.[3]  (Docs. No. 1, 3.)  Such "'[c]onsiderable delays,' especially those that might 'stretch on indefinitely,' are sufficient to show prejudice to the plaintiff."  *Joe Hand Promotions, Inc. v. Yakubets*, 3 F. Supp. 3d 261, 271 (E.D. Pa. 2014) (quoting *Grove v. Rizzi 1875 S.P.A.*, No. 04-2053, 2013 WL 943283, at *2 (E.D. Pa. Mar. 12, 2013)).  Mr. Diaz would also be prejudiced where he would not be compensated for the overtime hours that he worked because "Defendant's default has prevented [him] from litigating this matter and [he] will not be able to recover the delinquent [wages] [he] is due absent the entry of default."  *Trs. of Nat'l Elec. Benefit Fund v. Mirarchi*

---

[3]   During the pendency of this case, Sunrise Groups filed for Chapter 7 bankruptcy on November 30, 2022.  *In re Sunrise Groups, LLC*, No. 22-13215, Doc. No. 1 (Bankr. E.D. Pa. Nov. 30, 2022).  The bankruptcy case closed on March 23, 2023.  *Id.*, Doc. No. 14.

7

*Bros., Inc.*, No. 21-4399, 2022 WL 221610, at *4 (E.D. Pa. Jan. 24, 2022).  The first factor thus weighs in favor of default judgment.

Second, Sunrise Groups does not appear to have a litigable defense.  Because Sunrise Groups has not entered an appearance, the Court presumes that it has no meritorious defense.  *Zurich Am. Ins. Co. v. Gutowski*, 644 F. Supp. 3d 123, 140 (E.D. Pa. 2022) (citing *Joe Hand Promotions*, 3 F. Supp. 3d at 271–72).  Taking the allegations as true and uncontested, Mr. Diaz worked more than 40 hours per week in a typical workweek, was not compensated for that additional time, and Sunrise Groups thus violated the FLSA and PMWA for not paying him one-and-a-half times rate that he was owed.  The same is true for Mr. Diaz's PWPCL claim where he pleads that Sunrise Groups would deduct wages for purported quality defects where such deductions are not permitted under the PWPCL.  (Doc. No. 11 ¶¶ 47–48.)  The second factor weighs in favor of default judgment.

Last, the Court finds that Sunrise Groups' delay is due to its own culpable conduct.  Sunrise Groups was served with the summons and original complaint on September 2, 2021 and did not file any responsive pleading.  (Doc. No. 3.)  Mr. Diaz filed an amended complaint in November 2021, sent the summons by e-mail to Sunrise Groups, and did not receive a responsive pleading to that amended complaint either.[4]  (Docs. No. 5, 6.)  In April 2024, the Court ordered that the parties submit a *joint* status report, and only Mr. Diaz submitted such a report to the Court's Chambers.[5]  After being served with the motion for default judgment,

---

[4] Service of an amended pleading is governed by Federal Rule of Civil Procedure 5, and Rule 5(a)(2) states: "No service is required on a party who is in default for failing to appear.  But a pleading that asserts a new claim for relief against such a party must be served on that party under Rule 4."  No new claim was included in the Amended Complaint and default was already entered as to Sunrise Groups; thus, service of the amended complaint was not required.

[5] This is of no surprise, given that no attorney has ever entered an appearance on behalf of Sunrise Groups.

Sunrise Groups *still* did not respond in any way. Sunrise Groups also did not appear for the hearing on the motion for default judgment. Thus, "[t]here is nothing in the record for the [C]ourt to infer that [Defendant]'s failure to act in this case is anything other than deliberate action, which would constitute culpable conduct and weigh in favor of a default judgment." *Zurich Am. Ins. Co.*, 644 F. Supp. 3d at 141. The third and final *Chamberlain* factor also weighs in favor of default judgment.

Because Mr. Diaz has pled failure to pay overtime claims in violation of the FLSA and PMWA, has pled failure to pay contractual wages under the PWPCL, and the *Chamberlain* factors weigh in his favor, the Court holds that default judgment is appropriate.

### III. Damages

"Having determined that [Mr. Diaz is] entitled to entry of default judgment, the Court must calculate the proper amount of damages. . . ." *Thorn Flats*, 2022 WL 1720014, at *3 (quoting *Serv. Emps. Int'l Union*, 325 F. Supp. 3d at 637). Mr. Diaz seeks $45,571.82, "plus interest on the judgment at the legal rate until the judgment is satisfied." Pl.'s Mot. to Enter Default J. 1, Doc. No. 11. Mr. Diaz specifically seeks $16,871.90 in overtime and regular wages owed from April 16 through June 13, 2020; $9,441.41 for the same from June 14 through August 29, 2020; liquidated damages of $11,996.51; and $7,162.00 in attorneys' fees and costs. (Doc. No. 11-1 at 6–11.) Mr. Diaz also seeks an additional $1,316.00 in attorneys' fees and $260.74 in costs for work completed after filing the motion for default judgment. (Doc. No. 18 at 3.) The Court evaluates each of these in turn.

#### A. <u>Overtime wages from April 16 to June 13, 2020</u>

Under the FLSA, "employers must pay employees one-and-a-half times their 'regular rate' of pay for all hours worked above a forty-hour work week." *Sec'y U.S. Dep't of Lab. v. Bristol Excavating, Inc.*, 935 F.3d 122, 127 (3d Cir. 2019) (citing 29 U.S.C. § 207(a)).

9

"'[R]egular rate is defined as including 'all remuneration for employment paid to, or on behalf of, the employee. . . .'" *Id.* (alterations in original) (quoting 29 U.S.C. § 207(e)(1)–(8)). "A court determines the regular hourly rate of pay 'by dividing [the employee's] total remuneration for employment (except statutory exclusions) in any workweek by the total number of hours actually worked by him in that workweek for which such compensation was paid." *Jones v. Does 1-10*, 857 F.3d 508, 514 (3d Cir. 2017) (alterations in original) (quoting 29 C.F.R. § 778.109).

Here, for the period of April through June 2020, Mr. Diaz states in his sworn declaration that he worked 78 hours per week and was paid on a piecework basis of $175 per job completed. Dec. of Ritchie Diaz ¶¶ 7, 9, Doc. No. 11-2. To calculate the regular pay, he multiplies this rate times the number of jobs completed for the week. Pl.'s Mem of L. in Supp. Mot. for Default J. 7, Doc. No. 11-1; Dec. of Ritchie Diaz ¶ 9, Doc. No. 11-2. He then derives the regular rate of pay by dividing the regular pay by the number of hours worked in the week. This number divided by two and then multiplied by the number of hours worked yields the overtime amount that is owed. Based on this calculation, Mr. Diaz argues that the amount of overtime owed is $5,722.84. (Doc. No. 11-1 at 8.)

The Court holds that the method of calculating overtime owed and the total amount are sound, even though inconsistently Mr. Diaz alleges that he "was paid a day rate of $75 per shift, plus $20 per job completed" in his Amended Complaint. Am. Compl. ¶ 22, Doc. No. 5. Although the pay structures differ, the Court calculates appropriate monetary damages by looking to Mr. Diaz's sworn declaration rather than those alleged in the operative complaint, which are not taken as true. *Tristrata Tech., Inc. v. Med. Skin Therapy Rsch., Inc.*, 270 F.R.D. 161, 164–65 (D. Del. 2010) (quoting *Comdyne I, Inc. v. Corbin*, 908 F.2d 1142, 1149 (3d Cir.

1990)); *cf. Delloye v. Revolutionary Armed Forces of Colombia*, No. 18-1307, 2022 WL 36292, at *3–4 (M.D. Pa. Jan. 4, 2022) (holding that the "uncontroverted declarations" were "credible and sufficient to determine damages without a hearing").  The Court finds Mr. Diaz's sworn declaration to be credible and have more weight than the allegations in the Amended Complaint.  Thus, the Court finds that Mr. Diaz is entitled to $5,722.84 in overtime for this period.

Mr. Diaz also argues that he is owed $11,149.06 for unlawful deductions taken from his pay during this period from April 16 through June 13, 2020.  In his declaration supporting the Motion for Default Judgment, Mr. Diaz simply states that Sunrise Groups "unlawfully deducted $11,149.06 from my pay for entirely impermissible reasons.  For example, Defendant deducted amounts from my wages when customers were dissatisfied with service quality and for job expenses."  Decl. of Ritchie Diaz ¶¶ 10-11, Doc. No. 11-2.  The Court finds Mr. Diaz's damages here credible.  As indicative evidence, Mr. Diaz includes an invoice that purports to show that his employer invoiced Mr. Diaz for $2,700 for money owed regarding a job he completed in Connecticut that shows unpaid earnings from his last two weeks of employment.  Suppl. in Supp. of Mot. to Enter Default J. 1, Doc. No. 18; Ex. F at 8, Doc. No. 18-1.  Mr. Diaz also provided the Court with a video where he states that his employer deducted a significant amount of his pay to replace a fiber optic cable when the company instead only cut an excess portion of the cable.  Sunrise Groups has not entered an appearance or refuted any of Mr. Diaz's claims, and the Court has no reason to question Mr. Diaz's credibility.  Thus, the Court finds that Mr. Diaz is owed $11,149.06 in unlawful deductions for this period.

### B. Overtime and withheld wages from June 14, 2020 through September 2020

For the weeks of June 14, June 21, and July 12, 2020, Mr. Diaz argues that he was not paid at all and that Sunrise Groups thus owes $5,240.00 in regular pay and $1,276.41 in additional overtime for this period of time.  (Doc. No. 11-1 at 8.)  The Court agrees with the

computation and amount here based on the same evidence discussed above.  Thus, the Court finds Mr. Diaz is owed $5,240.00 in regular pay and $1,276.41 in additional overtime for this period.

Mr. Diaz then states in his sworn declaration that from August 11 to September 1, 2020, he was to be paid $75 per day and a rate of $20 per completed job, which is the payment scheme that Mr. Diaz included in his Amended Complaint.  (Dec. of Ritchie Diaz ¶ 23, Doc. No. 11-2; Doc. No. 5 ¶ 22.)  For these two weeks, Mr. Diaz argues that he was again not paid and thus owed $2,700 in regular pay for these two weeks and $225 in overtime wages.  The Court finds that the computations provided here are correct and awards the total of $2,925.00 owed for these two weeks.

### C. Liquidated damages

Mr. Diaz also seeks liquidated damages under the FLSA and PWPCL.  (Doc. No. 11 at 10.)  Under the FLSA, "[a]n employee is entitled to liquidated damages unless the employer shows its actions were 'in good faith and that [it] had reasonable grounds for believing that [its] act or omission was not a violation" of the FLSA.  *Qu Wang v. Fu Leen Meng Rest. Ltd. Liab. Co.*, No. 16-8772, 2018 WL 1027446, at *5 (D.N.J. Feb. 23, 2018) (quoting *Brock v. Claridge Hotel & Casino*, 846 F.2d 180, 187 (3d Cir. 1988)).  "Where, as here, a defendant has failed to appear, and has not presented any evidence regarding good faith, a court should award liquidated damages to the plaintiff."  *Id.* (citations omitted).

Under the FLSA, liquidated damages are equal to the unpaid overtime compensation and should be awarded in addition to the unpaid compensation.  *Brooks*, 185 F.3d at 137 (quoting 29 U.S.C. § 216(b)).  Mr. Diaz argues that he is owed $7,224.25 in total overtime wages, which would constitute his liquidated damages under the FLSA.  Because Sunrise Groups has failed to

appear and has not presented any evidence regarding good faith, the Court awards Mr. Diaz $7,224.25 in liquidated damages.

Under the PWPCL, the employee is entitled to liquidated damages in "an amount equal to twenty-five percent (25%) of the total amount of wages due, or five hundred dollars ($500), whichever is greater." 43 Pa. Cons. Stat. § 260.10. Mr. Diaz argues that he is owed $19,089.06 in unpaid wages under the PWPCL and thus entitled to $4,772.27 in liquidated damages (25% times $19,089.06). The Court again finds this computation and amount sound and thus awards $4,772.27 in liquidated damages under the PWPCL to Mr. Diaz.

Thus, Mr. Diaz is entitled to $11,996.52 in total liquidated damages.

### D. **Attorneys' fees and costs**

Next, Mr. Diaz seeks attorneys' fees and costs totaling $8,738.74 ($796.74 in costs and $7,942 in attorneys' fees). (Doc. No. 11-1 at 11; Doc. No. 18 at 3.) The costs incurred were $402 to file the complaint, $125 to serve the complaint, and $9 for a defendant business search. (Doc. No. 11-1 at 11.). In his supplement to his motion for default judgment, Mr. Diaz's attorney avers that he incurred another $260.74 in costs to attempt service of the motion for default judgment. (Doc. No. 18 at 3.) Such costs to bring the case and serve a defendant that has continually dodged this litigation over multiple years are reasonable. Attorneys' fees included Benjamin Salvina, Esquire, billing $325 an hour for six hours for the original consultation, drafting the amended complaint and complaint, and requesting entry of default. (Doc. No. 11-1 at 11.) Mr. Diaz's present counsel, Jake D. Novelli, Esquire, also billed 0.2 hours for entering an appearance and 16.5 hours for the default judgment motion, all billed at $280 per hour. (*Id.*) Mr. Novelli billed another 4.7 hours after his original motion for default judgment for, *inter alia*, preparing for the default judgment hearing, communicating with his client, and drafting a supplement to the motion for default judgment. (Doc. No. 18 at 3.)

The Court must determine whether the attorneys' fees are reasonable. *Ackourey v. Raja Fashions Bespoke Tailors*, No. 13-2315, 2014 WL 4473656, at *4 (E.D. Pa. Sept. 11, 2014) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)). In this instance, the Court finds that the number of hours billed are not reasonable as it pertains to the default judgment motion. The Court acknowledges that Mr. Diaz's original attorney, Mr. Salvina, left the law firm in January 2022 and withdrew his appearance on June 10, 2024, but Mr. Novelli filed his notice of appearance in this case on June 6, 2022, just before Mr. Salvina withdrew his appearance. (Docs. No. 8, 9.) Mr. Novelli admitted during the hearing on the motion for default judgment that Mr. Diaz's case "fell to the wayside" from June 2022 through April 2024, and that "[o]nce the default was entered, . . . there were other things that took priority [before] moving for default judgment." Hr'g Tr. at 7:12–21. Mr. Novelli is not entitled to attorneys' fees for time spent reviewing the client's file after his law firm lost track of the case for approximately two years. The Court allows a reasonable amount of time to be billed for drafting the default judgment motion and putting together various charts for the damages at issue, but 16.5 hours is excessive. It is significantly higher than the amount billed in other cases, and the Court finds that 5 hours is more appropriate. *See, e.g.*, *Ackourey*, No. 13-2315, Dec. of Michael J. Brooks 2, Doc. No. 14-2 (billing 3.6 hours to draft and file motion for default judgment); *IBEW Loc. Union No. 98 Health & Welfare Fund v. D'Narpo Elec., LLC*, No. 21-1923, Aff. of Ryan R. Sweeney, Esq. 5, Doc. No. 9-5 (billing 5.5 hours to prepare motion for default judgment).

The Court has similar concerns regarding the time billed for (1) serving the motion for default judgment, (2) responding to the Court's request for additional information concerning the years of experience for the attorneys who had worked on this matter, and (3) Mr. Novelli' entry of appearance in the matter, which is an administrative task. As to the Court's request for

additional information concerning the attorney's experience, although Mr. Novelli provided the years of bar admission for each attorney, he merely directed the Court to review LinkedIn pages and firm websites to learn about each attorney's experience. *See* Doc. No. 20. The Court cannot find that an additional 4.7 hours was needed in order to write a response to the Court directing the Court to review certain sites. The Court finds that only two hours for these supplemental items is reasonable and reduces the number of hours accordingly. The Court also reduces the time Mr. Novelli spent for entering his appearance to zero because administrative tasks should not be billed or compensated. *See Nitkin v. Main Line Health*, No. 20-4825, 2022 WL 2651968, at *8 (E.D. Pa. July 8, 2022) (collecting cases) (holding that the plaintiff's attorney should not be compensated for administrative tasks). This leaves a total of seven total hours billed by Mr. Novelli, which is more appropriate for a motion for default judgment of this nature.

The Court also adjusts the requested attorneys' fees for the work that Mr. Salvina performed on the matter. Mr. Salvina billed 1.25 hours to request the first entry of default and then billed another 1.5 hours in requesting the second entry of default. Aff. of Jake Daniel Novelli, Esq. 2, Doc. No. 11-4. Complexity and rigor do not tend to associate with requesting an entry of default that would require such an amount of time. Thus, the Court reduces these tasks to 0.5 hours each.

The Court looks to the Philadelphia Community Legal Services' fee schedule ("CLS Fee Schedule") to determine whether the rates Mr. Novelli and Mr. Salvina charged are reasonable. *See Ackourey*, 2014 WL 4473656, at *4 (finding that the Court of Appeals for the Third Circuit and several courts in the Eastern District of Pennsylvania have used the CLS Fee Schedule). As stated earlier, Mr. Novelli, however, does not include the number of years of experience for Mr. Salvina or himself and instead provides only years of bar admissions. Assuming that the two

attorneys practiced law consistently since the years of their admission, this means that Mr. Salvina had 9-10 years of experience when working on this matter, and Mr. Novelli has approximately three. Mr. Salvina's billable rate was $325 per hour, and Mr. Novelli's is $280 per hour. These amounts are generally consistent with those charged by an attorney with 6-10 years of experience and one with 2-5 years of experience, respectively. *Attorney's Fees*, Cmty. Legal Servs. of Phila., https://clsphila.org/about-community-legal-services/attorney-fees/ (last visited June 20, 2024). It appears that Mr. Salvina's rate was below the CLS rate, and Mr. Novelli's was within the applicable range. Thus, the Court finds the billable rates reasonable.

In total, the Court awards Mr. Diaz $796.74 in costs and $3,341.25 in attorneys' fees as detailed in the chart below ($1,381.25 for the 4.25 hours by Mr. Salvina at a rate of $325 an hour and $1,960 for the seven hours by Mr. Novelli at a rate of $280 per hour).

| Task | Hours | Attorney | Hourly Rate | Requested Fee | Court-Adjusted Hours | Court-Adjusted Fee |
|---|---|---|---|---|---|---|
| Consultation | 1 | Benjamin Salvina | $325.00 | $325.00 | 1 | $325.00 |
| Draft Complaint | 1.75 | Benjamin Salvina | $325.00 | $568.75 | 1.75 | $568.75 |
| Request for Default 1 | 1.25 | Benjamin Salvina | $325.00 | $406.25 | 0.5 | $162.50 |
| Amended Complaint | 0.5 | Benjamin Salvina | $325.00 | $162.50 | 0.5 | $162.50 |
| Request for Default 2 | 1.5 | Benjamin Salvina | $325.00 | $487.50 | 0.5 | $162.50 |
| Entry of Appearance | 0.2 | Jake D. Novelli | $280.00 | $56.00 | 0 | $0.00 |
| Default Judgment Motion | 16.5 | Jake D. Novelli | $280.00 | $4,620.00 | 5 | $1,400.00 |
| Supplemental Default Judgment Tasks | 4.7 | Jake D. Novelli | $280.00 | $1,316.00 | 2 | $560.00 |

### E. Interest

Last, Mr. Diaz seeks "interest on the judgment at the legal rate until the judgment is satisfied." Mot. to Enter Default J. 1. Because interest will accrue on a federal judgment, federal law applies. *Thorn Flats*, 2022 WL 1720014, at *4. Federal law provides that "[i]nterest shall be allowed on *any* money judgment in a civil case recovered in a district court." 18 U.S.C. § 1961(a) (emphasis added). "Such interest shall be calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve system, for the calendar week preceding[] the date of the judgment." *Id.* Thus, Mr. Diaz is entitled to a post-judgment interest rate of 4.86%.[6]

### CONCLUSION

For the foregoing reasons, the Court grants the Motion for Default Judgment. In sum, the Court awards Mr. Diaz $7,224.25 in overtime wages under the FLSA, $19,089.06 in unlawfully deducted wages under the PWPCL, $11,996.52 in liquidated damages under the FLSA and PWPCL, and $4,137.99 in costs and attorneys' fees. An appropriate Order follows.

---

[6] The rate can be found at https://www.federalreserve.gov/datadownload/Preview.aspx?pi=400&rel=H15&preview=H15/H15/RIFLGFCY01_N.WF (last visited July 24, 2024).